# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IRENE SIMMONS, | ) |
| Plaintiff, | ) |
| v. | ) |
| CITY OF CHICAGO; CHICAGO POLICE OFFICERS DAVID SALGADO, XAVIER ELIZONDO, ROBERTO RAMIREZ, RICHARD MOSTOWSKI, LISA TORRES, ARNOLDO LUEVANO, MARCOS PEREZ, and UNKNOWN OFFICERS, | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

## COMPLAINT

Plaintiff Irene Simmons, by her attorneys, Loevy & Loevy, complains of Defendants City of Chicago, Chicago Police Department Officers Salgado, Elizondo, Ramirez, Mostowski, Torres, Luevano, Perez, and Unknown Officers, as follows:

### INTRODUCTION

1. Plaintiff Irene Simmons was arrested for a narcotics crime she did not commit.

2. Defendants fabricated evidence against Plaintiff to obtain a bogus search warrant that they utilized to unlawfully search her home, threaten her, and ultimately falsely accuse her of a crime.

3. Defendant Officers falsely arrested Plaintiff, claiming to recover drugs during a search that Defendants did not, in fact, recover during the search.

4. Plaintiff's false arrest was one of many that Defendants Elizondo and Salgado manufactured against innocent citizens.

5. Defendants Elizondo and Salgado have now been federally convicted of crimes related to their false and fabricated search warrants that resulted in false arrests. *See United States v. Elizondo and Salgado* (N.D. Ill. 18 CR 286).

6. All charges against Plaintiff were dismissed.

7. Plaintiff brings this suit to seek redress for the wrongs committed against her.

## JURISDICTION AND VENUE

8. This action is brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of Plaintiff's rights secured by the U.S. Constitution.

9. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and has jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district, the majority of the Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

11. Plaintiff Irene Simmons is a resident of Cook County, Illinois, where she was falsely accused of crimes she did not commit. Plaintiff was a resident of Cook County, Illinois at the time the incident at issue took place.

12. Defendant City of Chicago is an Illinois municipal corporation and is and/or was the employer of each of the Defendant Officers. The City of Chicago is liable for the acts of the Defendant Officers while acting within the scope of their employment for the City. Additionally, the City of Chicago is responsible for the policies and practices of the Chicago Police Department

13. At all times relevant hereto, Salgado, Elizondo, Ramirez, Mostowski, Torres, Luevano, Perez, and other unknown law enforcement officers (collectively, the "Defendant Officers") were police officers in the Chicago Police Department acting under color of law and within the scope of their employment for the City of Chicago.

**FACTS**

14. Defendant Officers fabricated evidence to obtain a search warrant to allow them to search Plaintiff's residence on October 17, 2017.

15. On the evening of her arrest, Plaintiff was home with her 3-year-old granddaughter when she heard a loud boom and kicking at her door.

16. Believing she was being robbed, Plaintiff ran toward a back bedroom in her apartment where her granddaughter was located.

17. As Plaintiff ran toward the bedroom, Defendant Officers broke down her front door and entered her home armed with a bogus search warrant.

18. Some of Defendant Officers handcuffed Plaintiff and detained her and her granddaughter.

19. Defendant Officers than ransacked the apartment, damaging fixtures and other property in the apartment.

20. Defendant Officers falsely arrested Plaintiff, fabricating a claim that they found illegal narcotics and paraphernalia that they did not, in fact, recover during the raid.

21. Defendant Officers conspired to create false and fabricated police reports, including false and fabricated inculpatory statements which Defendants attributed to Plaintiff.

22. As a result of the Defendant Officers' misconduct, Plaintiff was wrongfully detained and faced criminal charges.

23. The charges were dismissed in June 2018.

### Defendants Salgado and Elizondo Are Arrested and Convicted

24. In January 2018, Defendants Elizondo and Salgado were taken off street duty because of allegations that they falsified search warrants, along with other misconduct.

25. On May 10, 2018, Defendants Elizondo and Salgado were arrested and charged via federal indictment in the Northern District of Illinois. The superseding indictment charged conspiracy to commit theft, embezzlement, obstruction of justice, false statements to law enforcement, and conspiracy to deprive residents of Chicago of the right to be free from unreasonable searches pursuant to a warrant knowingly obtained through false and fabricated information.

26. In addition, the indictment alleged that Defendant Elizondo and Salgado submitted materially false search warrant applications and induced informants to provide false information to Cook County judges to fraudulently obtain warrants so Defendant Officers could seize and steal items from Chicago residents.

27. On October 22, 2019, Defendants Elizondo and Salgado were convicted on all counts.

## Policy and Practice of Impunity

28. At all times relevant to Plaintiff's claims, the City of Chicago and the Chicago Police Department routinely failed to investigate cases in which Chicago Police Officers fabricated evidence and/or arrested an individual without probable cause. Prior to and during the period in which Plaintiff suffered false arrest and wrongful prosecution, the City of Chicago also operated a dysfunctional disciplinary system for Chicago Police officers accused of serious misconduct. The City almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public. The Chicago Police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct.

29. The United States Department of Justice recently issued a report discussing the deficiencies within the Chicago Police Department. On the subject of supervision, the DOJ concluded among other things that "[i]nstead of

encouraging the chain of command to instill proper policing tactics and respect for constitutional policing in CPD officers, CPD provides little incentive, or even opportunity, for supervisors to meaningfully guide and direct CPD officers. CPD provides even less incentive for supervisors to hold officers accountable when they deviate from CPD policy and the law. The City has long known that CPD's direct supervision of officers is inadequate, including through the fact that multiple reports in the last two decades have highlighted deficiencies in CPD's supervisory practices. Yet, City and CPD leadership have not made the necessary reforms to CPD's supervision structure and processes, and community and officer safety suffer as a result."

30. The DOJ "confirmed that CPD's accountability systems are broadly ineffective at deterring or detecting misconduct, and at holding officers accountable when they violate the law or CPD policy." In particular, the Department of Justice found that the City failed to investigate nearly half of misconduct complaints; where investigations did occur, there were "consistent patterns of egregious investigative deficiencies"; and where misconduct complaints are sustained, discipline was inconsistent and unpredictable.

31. Similarly, the Chicago Police Accountability Task Force ("PTAF") reported in April 2016 that "[g]oing back years, and continuing to the present day, CPD has missed opportunities to make accountability an organizational priority."

32. Between 2004 and 2016, the City paid more than $500 million to settle or pay judgments in police misconduct cases, without even conducting disciplinary

investigations in more than half of the cases, and while recommending discipline in fewer than 4% of those cases.

33. Between 2011 and 2015, nearly half of complaints filed against Chicago Police officers were not even investigated.

34. More than 95% of complaints against the Chicago Police are found to be unsustained.

35. Less than 2% of complaints against the Chicago Police resulted in any discipline.

36. As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence within the Chicago Police Department. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

37. The failure of police supervision and discipline in the City of Chicago during the relevant time period is a fact admitted by City policymakers and Chicago Police officers.

38. Former Mayor of the City of Chicago Rahm Emanuel has acknowledged that a "code of silence" exists within the Chicago Police Department.

39. In December 2016, the President of the police officers' union in Chicago admitted that there is a "code of silence" in the Chicago Police Department.

40. In 2017, the U.S. Department of Justice found that current officers of the CPD and former high-level officials of the CPD acknowledged a "code of silence."

41. Recently, Mayor Lori Lightfoot urged federal prosecutors to examine the trial of Chicago Police officers accused of covering up the Laquan McDonald shooting, saying "[w]e've got to have transparency and healing."

42. Even more recently, in January 2020, the interim head of the Chicago Police Department also acknowledged the code of silence.

43. The code of silence in the Chicago Police Department has been longstanding.

44. In the case of *Klipfel v. Bentsen*, No. 94 C 6415 (N.D. Ill.), a federal jury found that as of 1994 the Chicago Police maintained a code of silence that facilitated police misconduct.

45. In *Obrycka v. City of Chicago*, No. 07 C 2372 (N.D. Ill.), a different federal jury found that, as of February 2007, "the City had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

46. The same code of silence and ineffective system of police oversight were in place when Plaintiff's constitutional rights were violated.

47. As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the Chicago Police Department, officers (including the Defendants here) have come to believe that

they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences.

48. As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens. This includes Defendants in this case.

## Policy and Practice of Fabricating Evidence

49. The Chicago Police Department is responsible by virtue of its official policies for scores of miscarriages of justice like that inflicted upon Plaintiffs.

50. Since 1986, well over 100 cases have come to light in which Chicago police officers fabricated false evidence and/or suppressed exculpatory evidence in order to cause the arrests and subsequent convictions of innocent persons for serious crimes that they did not commit. This number does not even take into account the scores of false arrests that did not result in conviction.

51. At all relevant times, members of the Chicago Police Department, including the Defendants in this action, routinely manufactured evidence against innocent persons by coercing, manipulating, threatening, pressuring, and offering inducements to suspects and witnesses to obtain false statements implicating innocent persons, knowing full well that those statements were false.

52. Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Defendants, fabricated reports, witness identifications, and other evidence, which was used to wrongfully prosecute Plaintiff.

53. The City of Chicago and final policymaking officials within the Chicago Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

54. The policies and practices described in the foregoing paragraphs were also approved by the City of Chicago policymakers, who were deliberately indifferent to the violations of constitutional rights described herein.

### Plaintiffs' Damages

55. Plaintiff suffered pain, mental anguish, anxiety, fear, humiliation, embarrassment, despair, rage, damage to her personal property, and other effects as a result of Defendants' misconduct.

56. As a result of the foregoing, Plaintiff has suffered substantial damages proximately caused by Defendants' wrongdoing.

### Count I: 42 U.S.C. § 1983 – Due Process

57. Each paragraph of this Complaint is incorporated as if restated fully herein.

58. In the manner described more fully above, Defendant Officers, while acting as investigators, individually, jointly, and in conspiracy with each other, deprived Plaintiff of her constitutional right to due process.

59. In the manner described more fully above, Defendant Officers deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among

others, as well as knowingly fabricated false evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

60. Defendants' misconduct directly resulted in the detention of Plaintiff and in the start of and continuation of unjust criminal proceeding against Plaintiff, denying her of her constitutional right to due process under the Fourteenth Amendment. Absent Defendants' misconduct, the prosecution of Plaintiff could not and would not have been pursued.

61. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Plaintiff's innocence.

62. Defendants' actions were taken under color of law and within the scope of their employment.

63. The City of Chicago is also directly liable for the injuries described in this Count because the City and CPD maintained official policies and customs that were the moving force behind the violation of Plaintiff's rights, as described more fully above.

64. Plaintiff's injuries were caused by CPD officers, agents, and employees of Defendant City of Chicago, including, but not limited to, the individually named Defendants, who acted pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

### Count II: 42 U.S.C. § 1983 – Fourth Amendment Claim

65. Each paragraph of this Complaint is incorporated as if restated fully herein.

66. In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with each other, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

67. In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of her liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

68. The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

69. Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend herself during those proceedings, resulting in a deprivation of her liberty.

70. In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which she was totally innocent. This was accomplished through Defendants' fabrication and suppression of evidence.

71. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's clear innocence.

72. The Defendants' actions were taken under color of law and within the scope of their employment.

73. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, pain, and other grievous and continuing injuries and damages as set forth above.

74. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

### Count III: 42 U.S.C. § 1983 – Failure to Intervene

75. Each paragraph of this Complaint is incorporated as if restated fully herein.

76. In the manner described more fully above, during the constitutional violations described herein, Defendants stood by without intervening to prevent the violation of Plaintiffs' constitutional rights, even though they had the opportunity to do so.

77. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth.

78. The Defendants' actions were taken under color of law and within the scope of their employment.

79. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

80. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**Count IV: 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights**

81. Each paragraph of this Complaint is incorporated as if restated fully herein.

82. Prior to the wrongful acts alleged herein, the Defendant Officers, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves deprive Plaintiff of her constitutional rights, all as described above.

83. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability by depriving Plaintiff of her rights.

84. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

85. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth.

86. The Defendants' actions were taken under color of law and within the scope of their employment.

87. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, pain, and other grievous and continuing injuries and damages as set forth above.

88. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

### Count V: Illinois Law – Malicious Prosecution

89. Each paragraph of this Complaint is incorporated as if restated fully herein.

90. In the manner described more fully above, Defendants accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

91. In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

92. The Defendants' actions were taken under color of law and within the scope of their employment.

93. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### Count VI: Illinois Law – Intentional Infliction of Emotional Distress

94. Each paragraph of this Complaint is incorporated as if restated fully herein.

95. The actions, omissions, and conduct of Defendant Officers, as set forth above, were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

96. The Defendants' actions were taken under color of law and within the scope of their employment.

97. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, pain, and other grievous and continuing injuries and damages as set forth above.

### Count VII: Illinois Law – Civil Conspiracy

98. Each paragraph of this Complaint is incorporated as if restated fully herein.

99. As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to deprive Plaintiff of her rights and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of her rights.

100. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

101. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth.

102. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, pain and suffering, and other grievous and continuing injuries and damages as set forth above.

### Count VIII: Illinois Law – *Respondeat Superior*

103. Each paragraph of this Complaint is incorporated as if restated fully herein.

104. While committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

105. Defendant City of Chicago is liable as principal for all torts committed by their agents.

### Count IX: Illinois Law – Indemnification

106. Each paragraph of this Complaint is incorporated as if restated fully herein.

107. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment.

108. Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff Irene Simmons respectfully requests that this Court enter a judgment in their favor and against the City of Chicago, Defendant Officers, and other as-yet-unidentified officers of the Chicago Police Department, awarding compensatory damages, attorneys' fees and costs against each Defendant, punitive damages against each of the Individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Scott Rauscher<br>
<i>One of Plaintiffs' Attorneys</i>

Jon Loevy
Arthur Loevy
Scott Rauscher
Joshua Tepfer
Theresa Kleinhaus
Sean Starr
Loevy & Loevy
311 North Aberdeen Street
Third Floor
Chicago, Illinois 60607
Phone: (312) 243-5900