IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IRENE SIMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-cv-00478 |
| v. ) | |
| ) | |
| CITY OF CHICAGO; CHICAGO POLICE ) | |
| OFFICERS DAVID SALGADO, XAVIER ) | |
| ELIZONDO, ROBERTO RAMIREZ, ) | Judge John F. Kness |
| RICHARD MOSTOWSKI, LISA TORRES, ) | |
| ARNOLDO LUEVANO, MARCOS ) | |
| PEREZ, and UNKNOWN OFFICERS, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' ELIZONDO AND SALGADO'S
MOTIONS TO STAY PROCEEDINGS**

Plaintiff Irene Simmons hereby responds in opposition to Defendants' Elizondo and Salgado's motions to stay the proceedings, as follows:

**INTRODUCTION**

Defendants Xavier Elizondo and David Salgado are former Chicago Police Department officers who were convicted in federal court of gross abuses of their powers as police officers. Plaintiff alleges that Elizondo, Salgado, and other Defendants victimized them in a manner that is similar to the conduct for which Elizondo and Salgado were convicted in federal court. The specific allegations raised by Plaintiff in this lawsuit, however, had no role in the government's prosecution or sentencing of Elizondo or Salgado.

Salgado has moved twice to stay his participation in discovery in this case, and this time he was joined by Elizondo. Dkt. 27; Dkt. 30; Dkt. 58 (Elizondo's motion). Given the case reassignment and the public health emergency, the Court never ruled on Salgado's original motion to stay. Regardless, Plaintiff takes the same position they did the first time, at least with respect to Salgado:

to limit the possibility that Salgado needs to choose between preserving his rights against self-incrimination or fully defending the civil action, Plaintiff agrees to delay questioning Salgado about the specific overt acts alleged in his criminal indictment (for which he was convicted) until the Seventh Circuit issues its ruling pertaining to that conviction. *See* Dkt. 30. The analysis is different with respect to Elizondo because he testified at the criminal trial. By testifying at his criminal trial, Elizondo already provided his version of the events at issue in the criminal case. Thus, requiring Elizondo to fully participate in discovery in the civil case now does not place him in the same situation as it might for Salgado.[1]

Defendants ask the Court for far more than the limited relief that Salgado should receive—they seek to delay their participation in discovery entirely, to a time that realistically will last beyond the fact discovery deadline set by this Court. The Court should reject this overbroad request. The Fifth Amendment concerns Elizondo and Salgado raise will not dissipate upon the conclusion of their criminal appeal. All other factors also favor denying the stay. Accordingly, Plaintiff asks this Court to deny Elizondo and Salgado's motions to stay save for a limited stay in favor of Salgado regarding specific questions pertaining to the facts underlying his criminal conviction.

## BACKGROUND

Plaintiff initiated this lawsuit on January 13, 2020 to seek redress for an October 17, 2017 raid of Plaintiff's home and for false arrest. In March 2019, the federal government unveiled a seven-count superseding indictment against Elizondo and Salgado that charged them with conspiracy to commit theft, embezzlement, obstruction of justice, false statements to law enforcement, and conspiracy to deprive residents of Chicago of the right to be free from unreasonable searches pursuant to a warrant

---

[1] Plaintiff's position with respect to Salgado is contingent on the assumption that Salgado files a Notice of Appeal. Plaintiff further reserves the right to request the stay be lifted prior to the any Seventh Circuit decision if circumstances so warrant.

knowingly obtained through false and fabricated information. Ex. 1 (Criminal Superseding Indictment). Additionally, the superseding indictment alleged that Defendants Elizondo and Salgado submitted materially false search warrant applications and induced informants to provide false information to Cook County judges to fraudulently obtain warrants so Defendant Officers could steal items from Chicago residents. Ex. 1.

The superseding indictment outlined a number of specific overt acts that were at issue. Namely, the indictment alleged that:

(1) Both Elizondo and Salgado distributed PCP to Confidential Informant A on October 17, 2017;

(2) Salgado distributed marijuana as payment to Confidential Informant B on November 25, 2017;

(3) In response to information told to both Defendants, on December 18, 2017, Elizondo told CS-1 that he would give CS-1 and Confidential Informant A portion of any property or narcotics received from a search of a residence;

(4) The next day, or on or about December 19, 2017, Salgado prepared a complaint for a "J Does" search warrant of a residence that he knew contained materially false information;

(5) That same day, December 19, 2017, both Defendants causes Confidential Informant A to appear before a Cook County judge and falsely pose as the source of information contained in the J. Doe search warrant application;

(6) That same day, December 19, 2017, Salgado falsely swore under oath to a Cook County judge;

(7) The next day, December 20, 2017, Elizondo communicated on a cellphone with CS-1 and Confidential Informant A while Salgado and other CPD officers executed the false "J. Doe" search warrant;

(8) On January 28, 2018, both Defendants stole $4,200 recovered during a search of a rental vehicle;

(9) The next day, January 29, 2018, after discovering that investigators had taken custody of the rental vehicle, both Defendants twice discussed Salgado removing property from inside his home, and Salgado subsequently departed work after his shift began; and

(10) The next day, January 30, 2018, both Defendants deleted data on their cell phones.

Ex. 1.

At Elizondo and Salgado's criminal trial, the government submitted evidence in support of these charges. The Plaintiff is not Confidential Informant A, B, or CS-1, and Plaintiff did not testify in the criminal case. In October 2019, months prior to the commencement of this lawsuit, Defendants Elizondo and Salgado were convicted of all counts. Elizondo testified at trial, and the government has alleged that he committed perjury on the stand. Ex. 5 (Sentencing Memorandum).[2]

As far as Plaintiff is aware (Plaintiff does not have the trial transcripts), the October 17, 2017 raid and false arrest alleged in Plaintiff's federal complaint were not discussed during the criminal trial. Neither Elizondo nor Salgado suggest otherwise in their motion.

On February 24, 2020, Salgado filed his first motion to stay these proceedings. Dkt. 27. On February 28, 2020, Plaintiff filed a response objecting. Dkt. 30. No ruling issued. It is worth noting, however, that in *Cruz v. City of Chicago, et al.*, Case No. 20-cv-250 (N.D. Ill.), Salgado filed an almost identical motion, which Judge Seeger denied without prejudice on May, 5 2020. In doing so, Judge Seeger gave Salgado guidance in the event that he chose to file another motion to stay. *Cruz* Dkt. 59. In particular, Judge Seeger asked for additional information pertaining to the similarity, overlap, or

---

[2] *See also* "Indicted Chicago police sergeant takes stand at corruption trial, claims he only pretended to be a dirty cop," Chicago Tribune, October 18, 2019, available at https://www.chicagotribune.com/news/criminal-justice/ct-chicago-cop-corruption-trial-20191019-cnlbxb6oqzfjfmthczxe3vva64-story.html (last visited June 11, 2020).

lack thereof between the allegations in Defendant Salgado's criminal case and Plaintiff's allegations. *Cruz* Dkt. 59. Judge Seeger also inquired about the status of the Salgado's sentencing. *Cruz* Dkt. 59.

Elizondo and Salgado's sentencing hearing occurred on March 11, 2020. Plaintiff did not testify, and no evidence was presented pertaining to the October 17, 2017 incident that is the subject of this federal complaint. Ex. 2 (Criminal Sentencing Transcript). Thus, there is no direct overlap between the criminal case and Plaintiff's individual claims against the Defendants.

Salgado was scheduled to be sentenced on March 23, 2020. Due to the public health emergency, the sentencing is now scheduled for July 15, 2020. Dkt. 47 at 6. Elizondo is currently scheduled to be sentenced on June 26, 2020. Dkt. 58 at 6. Needless to say, the ongoing public health crisis makes it far from certain that the sentencing will actually occur on this date. Salgado himself, in his motion, notes that the sentencing hearing is "currently scheduled" for this date, and qualifies his later assertion that a Notice of Appeal will be filed in early August by highlighting that is the case only "[p]resuming the sentencing proceeds" on July 15, 2020. Dkt. 47 at 6. Elizondo notes that he will file a Notice of Appeal by late July if his sentencing does not get postponed. Dkt. 58 at 6.

## LEGAL STANDARD

Stays of discovery are discretionary, and the party seeking a stay has the burden to demonstrate that the Court should exercise its discretion to grant a stay. *Indiana State Police Pension Trust v. Chrysler LLC*, 556 U.S. 961 (2009). Even where a defendant in a civil case may be forced to invoke his Fifth Amendment right to remain silent due to a related criminal proceeding, a stay is the "exception, not the rule." *See Estate of Swayzer v. Armor Correctional Health Services, Inc.*, No. 16-CV-1703, 2018 WL 1535953, *2-3 (E.D. Wis., Mar. 29, 2018).

"When deciding whether to grant a stay, courts consider six factors: (1) the posture of the criminal proceeding; (2) whether the civil and criminal matters involve the same subject; (3) whether the government entity in the criminal case is a party; (4) the burden the civil case will have on the

5

defendants if a stay is denied …; (5) the interest of the civil-case plaintiff in proceeding expeditiously, and the potential prejudice the plaintiff will suffer from delay; and (6) the effect of granting or denying a stay on the public interest." *Hollinger Intern., Inc. v. Hollinger Inc.*, No. 04 C 698, 2008 WL 161683, at *2 (N.D. Ill. Jan. 16, 2008).

Generally, even where a party might suffer irreparable injury, a stay is not a matter of right. *Indiana State Police Pension Trust*, 556 U.S. at 961. Moreover, "it is not unconstitutional to force a litigant to choose between invoking the fifth amendment in a civil case, thus risking a loss there, or answering the questions in the civil context, thus risking subsequent criminal prosecution." *Cruz v. City of DuPage*, No. 96 C 7170, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997). The *Cruz* court highlighted a D.C. Circuit Court decision that noted "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action *involving the same matter.*" *Id.* at *2 (quoting *Securities & Exchange Comm'n v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)) (italics added).

## ARGUMENT

### I. A consideration of all factors supports denying the stay.

This Court should, for the most part, deny Elizondo and Salgado's motions to stay discovery. The allegations in Plaintiff's Complaint do not involve the same subject matter as the criminal proceeding, the government is not a party to this lawsuit, and the interest of both the Plaintiff and the public support denying a stay. Further, Plaintiff's agreement to stay discovery directed to Salgado on the overt acts at issue in the criminal prosecution mitigates any burden the civil case may have on Elizondo or Salgado. That is, Salgado will not have to choose between defending this case or testifying about the overt acts at issue in the criminal case. And Elizondo has already made that choice by testifying in the criminal case, so requiring his participation in discovery does not impose a further burden on him. Taking into account Plaintiff's agreement to a limited

partial stay with respect to Salgado, the fact that Elizondo and Salgado have already been convicted for the acts alleged in the criminal case also weighs against the broad stay request.

### A. Plaintiff's allegations do not overlap with the facts at issue in Elizondo and Salgado's criminal case.

Defendants' motions detail the factual allegations by the U.S. Government and highlights that the government's allegations about Defendant Salgado's criminal activities go well beyond the individual act or acts charged in the indictment. Dkt. 47 at 4-5. Namely, Elizondo and Salgado highlight the government's memorandum, which explains that "[f]rom approximately the spring of 2017 until January 2018, the defendants repeatedly offered cash, drugs, and other stolen goods to impoverished and addicted individuals to cause them to appear before State court judges in support of false J. Doe search warrants," and that Elizondo and Salgado then "used these warrants" to burglarize, rob, forcefully enter homes and take property, "sometimes in the presence of the victims." Dkt. 47 at 4. As Plaintiff noted in her prior written response, the allegations in her complaint—that Defendants (including Elizondo and Salgado) used a bogus search warrant to ransack, burglarize, threaten, torment, and ultimately falsify charges against them—are, indeed, similar to the allegations made by the government in the criminal case. *See* Dkt. 30 (Plaintiff's Response to Defendant Salgado's First Motion to Stay Proceedings) ("Plaintiff agrees that the allegations made by them are 'similar' and 'related' to the facts underlying Defendant Salgado's criminal conviction.").

Although the allegations are similar, there is no actual overlap. Elizondo and Salgado were not convicted for any criminal conduct related to Plaintiff; Plaintiff did not testify in the criminal trial; and Plaintiff was neither listed as a witness nor testified at Elizondo and Salgado's sentencing hearing. To the best of Plaintiff's knowledge, the incident alleged in the instant civil complaint played no role in the trial or sentencing in either Elizondo or Salgado's criminal case.

7

### B. Plaintiff's allegations against Elizondo and Salgado do not involve the same subject matter as the criminal case.

As noted above, Plaintiff's allegations in the instant civil complaint played no role in the criminal case. The wrongdoing for which Plaintiff seeks redress was not alleged in the indictment, and no evidence was presented relating to these allegations at the trial or sentencing. Make no mistake, Plaintiff alleges that she was a victim of a *similar* type of misconduct as the misconduct for which Elizondo and Salgado were convicted. But that does not mean the criminal case and the civil complaint involve the same subject matter.

The *Swayzer* court drew this exact distinction. The in that case made the same argument that Elizondo and Salgado make here—that is, the defendant requested a stay because the *Swayzer* plaintiff alleged misconduct of a similar type that was alleged by the government in a pending criminal prosecution against the same defendant. The alleged misconduct in the criminal case, however, was based on incidents that had nothing to do with the *Swayzer* plaintiff. Just as in this case, the allegations in the criminal case in *Swayzer* concerned acts against different victims on different dates. *Swayzer*, 2018 WL 1535953, at *2-3. Based on this distinction, the *Swayzer* court determined that "the overall subject matter of the two cases is sufficiently distinct that this factor weighs against granting a stay." *Id.* at *3; *see also B.A. v. Bohlmann*, No. 09 CV 346, 2009 WL 3270124, at *3 (W.D. Wis. Oct. 8, 2009) (drawing same distinction). To the extent that the *Swayzer* court noted an overlap because "the criminal case will be covered by the civil case" during discovery, Plaintiff's agreement to stay discovery directed to Salgado regarding the specific facts at issue in the criminal case entirely mitigates that concern (given Elizondo's earlier decision to testify in the criminal trial).

### C. The government is not involved in the civil case.

When the government is involved in the civil matter, there is a concern that prosecuting authorities may use the civil discovery process to bolster the criminal prosecution. That concern is not present here because Plaintiff is a private citizen. Accordingly, this factor weighs against a stay as well.

8

*See Doe v. City of Chicago*, 360 F.Supp.2d 880, 881-82 (N.D. Ill. Jan. 18, 2005) ("Other factors weigh in favor of denying Sergeant Herman's request for a stay. The civil action was not brought by the government, and the government, is not a party to the civil action.").

### D. The procedural posture of the criminal case favors denying a broad stay.

Defendants retain their Fifth Amendment rights through direct appeal in their criminal cases. Because Elizondo and Salgado have both already been convicted, however, there is limited to no risk that requiring them to participate in discovery in the civil case could lead to information that the government would use as evidence in a criminal trial against them or that doing so would compromise ongoing criminal investigations. *See Cruz*, 1997 WL 370194, at *3; *Salcedo v. City of Chicago*, No. 09–cv–05354, 2010 WL 2721864, at *3 (N.D. Ill. July 8, 2010). That is particularly true for Elizondo, given the fact that he already testified at the criminal trial. *See, e.g.*, *United States v. Kimberlin*, 805 F.2d 210, 237 (7th Cir. 1986) ("In any event a defendant who testifies waives the privilege as to all matters reasonably related to the subject matter of his direct examination."). And because Plaintiff agrees to delay questioning Salgado about the specific facts at issue in their criminal case, the fact that Fifth Amendment protections remain through their direct appeal in a criminal case does not weigh in favor of a stay.

Ultimately, Elizondo and Salgado's "fear of criminal liability rests merely upon the fact that the state retains the prerogative to reopen investigations and bring additional charges." *See Swayzer*, 2018 WL 1535953, at *3. That same concern will always be an issue, even after the direct appeal has run. *See id.* at *4 ("A stay is disfavored where defendants are under the mere threat of criminal charges.") (citations omitted). Accordingly, considering this case as a whole and Plaintiff's partial agreement to the requested stay, the procedural posture of the criminal case does not favor a stay. *See id.* (where the procedural posture is such that there are mere indefinite fears that answering questions could lead to criminal charges, the factor weighs against a stay).

9

### E. A stay prejudices Plaintiff.

Courts have almost universally concluded that a stay prejudices a plaintiff. *See*, *e.g.*, *Swayzer*, 2018 WL 1535953, at *4 ("Plaintiffs obviously have a strong interest in having their cases resolved expeditiously and in obtaining prompt compensation for their injuries. As time passes, evidence disappears and memories fade; plaintiffs' cases rarely grow stronger with delays beyond what is necessary for their adequate preparation.") (internal citations omitted.); *see also CMB Export, LLC v. Atteberry*, No. 4:13–cv–04051–SLD–JEH, 2014 WL 4099721, at *4 (C.D. Ill. Aug. 20, 2014); *Doe*, 360 F.Supp.2d at 882; *Cruz*, 1997 WL 370194, at *4; *Hollinger Intern., Inc.*, 2008 WL 161683, at *4.

Elizondo and Salgado assert that Plaintiff's prejudice is mitigated because she can proceed with discovery against other Defendants. Although technically true, Elizondo and Salgado are likely the two crucial Defendants. Salgado is the first arresting officer and reporting officer on the police reports, and it appears that Elizondo signed the bogus search warrant. *See* Ex. 3 (Police Reports). And while Elizondo and Salgado assert that the request for a stay is not "indefinite," the reality is they request a stay that will likely extend for at least a year.[3] Foregoing discovery from the two crucial Defendants for such a lengthy time period is prejudicial.

### F. The public's interest favors denying a stay.

Under similar circumstances, the *Swayzer* court again weighed this factor toward denying a stay, noting that the public's interest in the prompt disposition of civil litigation. 2018 WL 1535953, at *4. The *Swayzer* court did note the public's interest in ensuring a criminal process untainted by civil litigation. But, just as in *Swayzer*, Elizondo and Salgado cannot articulate how the criminal process

---

[3] According to the most recent data from December 2019, in the Seventh Circuit, the median time from filing a Notice of Appeal to Disposition is 8.7 months. *See* U.S. Court of Appeals – Judicial Caseload Profile, Seventh Circuit. *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile1231.2019.pdf (last accessed June 11, 2020). As Defendants have not yet been sentenced, their time to appeal has not yet started to run.

would be tainted, especially given Plaintiff's partial agreement to the motion and the fact that Elizondo already testified at the criminal trial.

### G. The harm Elizondo and Salgado might face by participating now is no greater than it will be following the appeal of their convictions.

Elizondo and Salgado assert that they will be irreparably harmed absent a stay because the government "has made clear that its interpretation of the criminal conduct is broader than what has already been presented." Dkt. 47 at 9; Dkt. 58 at 9. That assertion ignores the fact that presentation of evidence in the criminal case is complete. The trial is concluded, and the evidence presented at sentencing is complete.

So, to be clear, the government may very well believe that Elizondo's and Salgado's criminal conduct far exceeded the charged offenses. Plaintiff agrees. Indeed, Plaintiff's allegations pertaining to her false arrest can fairly be described as alleging that Elizondo and Salgado engaged in criminal conduct. And Plaintiff certainly plans to explore other acts of misconduct, including by Elizondo and Salgado, throughout discovery in this matter—this discovery is plainly relevant and appropriate in support of Plaintiff's *Monell* allegations against the City. But ultimately, whenever Plaintiff explores these issues with Elizondo and Salgado, their concern about weighing potential criminal liability or asserting their Fifth Amendment privilege remains. It doesn't cease when the direct appeal is over or all other "potential avenues of relief exhausted." Dkt. 47, at 8; Dkt. 58 at 8. If the government believes it has a basis to re-indict Elizondo or Salgado for different crimes committed within a relevant statute of limitations—or that Elizondo or Salgado committed perjury in answering questions about alleged different crimes—the government can do so.

To that end, given that the actual presentation of evidence in the criminal case is complete—both at the trial and sentencing stages—the concerns articulated throughout Elizondo and Salgado's motions will never actually dissipate. The concern certainly do not dissipate upon the Seventh Circuit entering its order on Elizondo and Salgado's direct appeal. And with Plaintiff's agreement to delay

11

discovery relating to the actual overt acts at issue in the criminal prosecution with respect to Salgado, there is simply no basis to grant a broad stay.

### II. That other courts previously granted stays does not mean that this Court should do so.

Elizondo and Salgado points to a variety of cases where they have been sued and a motion for a stay was granted. Dkt. 47 at 2 (citing *Ramadan*, *Rosas*, *Robles*, *Boldon*, *Treadwell*, *Maldonado*, and *Teague*).[4] For one, many of those cases have settled, so their continued relevance at this point is minimal. *See Ramadan*, 18 CV 4020 (Dkt. 47), *Rosas*, 18 CV 3933 (Dkt. 52), *Robles*, 18 CV 4379 (Dkt. 78), *Boldon*, 18 CV 4233 (Dkt. 85). Second, whether settled or not, it does not appear the Defendants in any of those cases opposed the stay. *See e.g.*, *Maldonado v. Elizondo* (Dkt. 44) (granting "unopposed" motion to stay).[5]

Finally, save for *Soto* (which was ruled upon without a responsive pleading), each and every one of the motions to stay were filed long prior to the conclusion of Elizondo and Salgado's criminal trial. In those circumstances, the concerns that resonate throughout the cases allowing a stay in those circumstances, are much greater. For example, the plaintiff in *Treadwell* was listed on the government's initial witness list (and in fact testified at the sentencing hearing). Ex. 4 (Government's Initial Witness List in Criminal Case). If the stay were not granted, civil discovery could have interfered with the criminal case and the untenable situation of choosing between preserving the right against self-incrimination or fully defending the civil action would have been squarely at play. *See Cruz*, 1997 WL 370194, at *3. Indeed, that very well may be why all of the other plaintiffs agreed to the stay at the

---

[4] Elizondo and Salgado further noted that they moved for a stay in the matter of *Cruz v. City of Chicago*, 20 CV 250 and *Soto v. City of Chicago*, 20 CV 1805. Plaintiff's counsel in this matter also represent the *Cruz* plaintiffs, and they are filing a similar response and objection to the one filed herein. As for *Soto*, it appears Defendants' June 2, 2020 motion to stay was granted by Judge Lefkow the next day—or June 3, 2020—without any response being filed. *See Soto* (Dkts. 40-41).

[5] Plaintiff's counsel's review of the other orders does not make it readily apparent whether the motions were opposed or unopposed. However, it does not appear a written response or objection was filed in any case.

time—the government could always amend to add them and the concerns that resonate throughout the cases on this issue (such as civil discovery interfering with the criminal case) were very much at play. But that time has now passed.

There is no more evidence to be presented in Elizondo and Salgado's criminal case. Elizondo and Salgado's concerns are no greater now than they will be after their appeal is completed. Therefore, the prior rulings on the stay issue in other cases are not relevant to the current motion.

## CONCLUSION AND SPECIFIC REMEDY REQUESTED

Elizondo and Salgado ask to postpone their participation in discovery to a time that, at minimum, will likely be a year or more from now. This Court should deny this request.

Plaintiff proposes that this Court grant a limited stay, only for Salgado and only as it pertains to questions about the specific criminal acts alleged in the government's superseding indictment. Ex. 1. And to the extent that this partial stay lasts longer than the discovery schedule that is set in this case, Plaintiff requests that this Court allow that portion of fact discovery to occur after the fact-discovery deadline but before dispositive motions.

Respectfully submitted,

/s/ Joshua Tepfer
*One of Plaintiff's Attorneys*

Jon Loevy
Arthur Loevy
Scott Rauscher
Joshua Tepfer
Theresa Kleinhaus
Loevy & Loevy
311 North Aberdeen Street, Third Floor
Chicago, Illinois 60607
Phone: (312) 243-5900