## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IRENE SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-00478 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO; CHICAGO POLICE | ) | |
| OFFICERS DAVID SALGADO, XAVIER | ) | |
| ELIZONDO, ROBERTO RAMIREZ, | ) | Judge John F. Kness |
| RICHARD MOSTOWSKI, LISA TORRES, | ) | |
| ARNOLDO LUEVANO, MARCOS | ) | |
| PEREZ, and UNKNOWN OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS[1]

Plaintiff Irene Simmons alleges that her rights were violated by a group of extraordinarily corrupt current and former Chicago Police Officers, two of whom were recently convicted in federal court for similar misconduct. In this case, Ms. Simmons alleges that Defendants fraudulently obtained a search warrant for her home, ransacked her home while carrying out the bogus warrant, and framed her for a narcotics crime she did not commit. Plaintiff alleges that that the Defendant Officers undertook this scheme as a concerted action designed to harm Plaintiff and did so in keeping with the policies and practice of the City of Chicago.

Ms. Simmons filed this lawsuit pursuant to 42 U.S.C. § 1983 ("Section 1983") to seek redress for the violation of her constitutional rights. Plaintiff's allegations that Defendants fabricated evidence, withheld *Brady* evidence, detained Plaintiff in the absence of probable

---

[1] The Defendant Officers joined the City's Motion to Dismiss. Dkt. Nos. 60-63.

cause, failed to intervene to interrupt each other's misconduct, and conspired to frame Plaintiff for a crime she did not commit, unquestionably meet Rule 8's pleading standards and show that Defendants violated Plaintiff's constitutional rights. Accordingly, the Court should deny Defendants' motion to dismiss Plaintiff's federal civil rights claims.[2]

## Statement of Facts

On October 17, 2017 Plaintiff was at home with her three-year old granddaughter when the Defendant Officers[3] began violently breaking down her door. Dkt. 1 at ¶15. Plaintiff initially believed the disturbance was a robbery. *Id.* at ¶16. After Defendants broke down the door, they detained Plaintiff and the toddler, and they ransacked her apartment. *Id.* at ¶19.

Defendants falsely claimed to have found narcotics and drug paraphernalia in the raid. *Id.* at ¶20. Defendants also fabricated inculpatory statements which they attributed to Plaintiff. *Id.* at ¶21. Plaintiff faced criminal charges for a crime she did not commit. *Id.* at ¶22. The charges were dropped in June 2018. *Id.* at ¶23.

In May 2018, Defendants Xavier Elizondo and David Salgado were federally indicted for conspiracy to commit theft, embezzlement, obstruction of justice, false statements to law enforcement, and conspiracy to deprive residents of Chicago of the right to be free from unreasonable searches pursuant to a warrant knowingly obtained through false and fabricated information. *Id.* at ¶25. The indictment alleged that Defendants Elizondo and Salgado submitted materially false search warrant applications and induced informants to provide false information to Cook County judges to fraudulently obtain warrants so Defendant

---

[2] Plaintiff agrees to the dismissal of her substantive state-law claims, which are Counts V-VIII.

[3] "Defendant Officers" refers to Defendants Salgado, Elizondo, Ramirez, Mostowski, Torres, Luevano, Perez, and other unknown law enforcement officers.

Officers could seize and steal items from Chicago residents. *Id.* at ¶26. On October 22, 2019, Defendants Elizondo and Salgado were convicted on all counts. *Id.* at ¶27.

Plaintiff alleges that the Defendants Officers' misconduct was not an aberration. Rather, it was undertaken pursuant to the policies and practices of the Chicago Police Department, including policies and practices of fabricating evidence, withholding evidence, manipulating witnesses, covering up the misconduct of other officers, failing to discipline the officers who commit this misconduct and failing to train the officers. *Id.* at ¶¶28-54.

As a result of Defendants' misconduct, Plaintiff suffered mental anguish, anxiety, fear, humiliation, embarrassment, despair, rage, and damage to her personal property, among other effects. *Id.* at ¶55. Plaintiff brings this lawsuit to seek justice and redress the grievous wrongs Defendants inflicted on her.

**Legal Standard**

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). Plaintiff needs to pass only "two easy-to-clear hurdles" to survive Defendants' motion to dismiss: (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" does not mean the Court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the complaint must merely "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things

have happened, not *did* they happen." *Id.* (emphasis in original). At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

The Federal Rules of Civil Procedure permit notice pleading and only require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a)(2) "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Dismissal for failure to state a claim under Rule 12(b)(6) is proper only where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Virnich*, 664 F.3d at 212.

## Argument

### I.     Plaintiff States A Claim for a Fourteenth Amendment Due Process Violation.

Plaintiff alleges that she was arrested, detained, and charged based on evidence that was fabricated by Defendants and that exculpatory or impeaching evidence was withheld from her. Dkt. 1 at ¶¶4-23. This alleged misconduct plainly violates Plaintiff's constitutional rights, and Defendants do not argue otherwise. *See, e.g.*, *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018) (allegations of fabrication of evidence support a due process violation if the fabricated evidence is used in support of the prosecution, even pretrial); *Manning v. Miller*, 355 F.3d 1028, 1032-34 (7th Cir. 2004) (allegations that defendants withheld exculpatory or impeaching evidence state a due process claim); *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006) (due process is violated by unduly suggestive identification procedures). Although Defendants do not contest that Plaintiff's allegations assert a constitutional violation, they contend that because the charges against her were dropped before trial, she cannot pursue a Fourteenth Amendment due

process claim. In support, they rely on *Lewis v. City of Chicago*, Dkt. 50 at 4, *citing* 914 F3d 472, 475 (7th Cir. 2019), but subsequent Supreme Court precedent shows that *Lewis* is no longer good law. Specifically, the United States Supreme Court decision in *McDonough v. Smith* demonstrates *Lewis* is no longer sound. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019).

In *Lewis*, the plaintiff alleged that he spent two years in pretrial detention based on police reports that falsely indicated that he unlawfully possessed a firearm. *Lewis,* at 474. The charges against him were ultimately dropped and he sued the City of Chicago and six police officers. *Id.* The Seventh Circuit held that Fourth Amendment, rather than the Fourteenth Amendment, governs claims of allegedly unconstitutional pretrial seizures. *Id.* at 479 ("the Fourth Amendment, not the Due Process Clause, is the source of the right in a § 1983 claim for unlawful pretrial detention, whether before or after the initiation of formal legal process."). The Seventh Circuit decided *Lewis* in January 2019. Later that year, the Supreme Court decided *McDonough*.

In *McDonough,* the Supreme Court considered a case brought by a plaintiff who, like Plaintiff here, alleged a claim under the Fourteenth Amendment. *McDonough,* at 2154. The plaintiff in *McDonough*, like Plaintiff here, alleged that he was arrested, deprived of his liberty, and prosecuted based on fabricated evidence. *Id.* at 2154. And just as Plaintiff in this case was not convicted, the plaintiff in *McDonough* was ultimately acquitted of the charges. *Id.* The Supreme Court was tasked with determining when the pretrial detention claim accrued. *Id.* at 2154.

The Supreme Court in *McDonough* accepted the Second Circuit's assumption that the pretrial deprivation of liberty is governed by the Fourteenth Amendment due process clause. *Id.* at 2155. The Court also left open the possibility that other constitutional provisions—like the Fourth Amendment—might provide additional safeguards against fabricated evidence.

*McDonough,* at 2155 n. 2 ("In accepting the Court of Appeals' treatment of McDonough's claim as one sounding in denial of due process, we express no view as to what *other* constitutional provisions (if any) might provide safeguards against the creation or use of fabricated evidence enforceable through a 42 U.S.C. §1983 action.") (emphasis added); *see also McDonough,* at 2156 n. 3 (declining to define how a federal malicious prosecution claim under § 1983 might differ from a fabricated evidence claim). The Court held that when a plaintiff faces allegedly unconstitutional detention pretrial but is not convicted, a Fourteenth Amendment claim for allegedly illegal pretrial detention begins to run after the criminal process ends. *McDonough,* at 2158. In reaching that conclusion, the Supreme Court necessarily accepted the premise that a Fourteenth Amendment claim exists in such a circumstance, which means that *Lewis'* contrary holding is no longer good law. *Hutto v. Davis*, 454 U.S. 370, 374–75, (1982) (lower courts must respect the hierarchy of the federal court system and adhere to Supreme Court precedent).

Because the law as to this claim has been fluid, this Court has previously declined to dismiss a Fourteenth Amendment due process claim where it shares the same factual predicate as the Fourth Amendment pretrial detention claim. *Culp v. Flores*, No. 17 C 252, 2020 WL 1874075, at *3 (N.D. Ill. Apr. 15, 2020) (because Seventh Circuit case law did not conclusively answer whether plaintiff had a viable Fourteenth Amendment claim and because discovery on the Fourth and Fourteenth Amendment claims would be coextensive, the Court declined to dismiss the Fourteenth Amendment claim on the pleadings). The Court should likewise decline to dismiss Plaintiff's Fourteenth Amendment due process claim.

Plaintiff should be permitted to proceed on her Fourteenth Amendment claim.

## II.    **Plaintiff's Fourth Amendment Claim is Timely**.

Plaintiff brings a Fourth Amendment claim alleging that judicial proceedings were initiated against her in the absence of probable cause and that she was deprived of her liberty as a

result. Dkt. 1, Count II. In order to prevail on this claim, Plaintiff must show that she was deprived of her liberty in the absence of probable cause. *Lewis,* at 477. Defendants argue that this claim accrued when Plaintiff was released from custody on bond—in October 2017—which would make her claim untimely.[4] Dkt. 50 at 4-6. Defendants are incorrect.

For decades, plaintiffs have been barred from bringing any civil rights claims that would challenge extant criminal convictions or ongoing criminal proceedings. *Heck v. Humphrey,* 512 U.S. 477 (1994). This is a fact-specific inquiry governed by the allegations in the complaint. *See Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003). No civil claims about criminal proceedings may be brought until the criminal proceedings have terminated in the plaintiff's favor. *Heck*, 512 U.S. at 477. Otherwise, dissatisfied criminal defendants could circumvent the *habeas* process and instead challenge their convictions through §1983 lawsuits. *Id.* The Supreme Court has repeatedly reaffirmed this rule, as described more fully below.

Accordingly, Plaintiff could not bring her Fourth Amendment claim under §1983 until charges against her were dropped, in June 2018. Her claims were filed well within the two -year statute of limitations for Section 1983 claims. Plaintiff's Fourth Amendment claim is timely.

**A. The *Heck*-bar Applies to Plaintiff's Fourth Amendment Claim.**

Defendants ignore the analytical framework for the accrual of civil rights claims that the Supreme Court set forth in *Heck. Heck* considered a § 1983 claim brought by a prisoner who alleged his conviction and imprisonment was unconstitutional because of official misconduct before and during his criminal trial and because of the use of illegally obtained evidence at his trial. *Id.* at 478-79. The Supreme Court held that § 1983 suits for damages which challenge the validity of conviction or confinement are barred until the proceedings are terminated in the

---

[4] The parties agree that a two-year statute of limitations applies to this claim.

7

plaintiff's favor. *Id.* at 486-87. *Heck* requires district courts to engage in a factual analysis of the civil rights claim to determine whether it would "necessarily imply the invalidity of the conviction." *Id.* at 488 Thus, the application of *Heck* is fact-specific and requires the district court to ascertain the implication of the plaintiff's factual allegations.

The principle announced in *Heck* has also been extended to instances such as this one, where the plaintiff was not ultimately convicted of the criminal charges brought against him. *McDonough,* 139 S. Ct. at 2158. In *McDonough,* the plaintiff alleged that he was arrested, deprived of his liberty, and prosecuted based on fabricated evidence. *Id.* at 2154. He was ultimately acquitted of the charges. *Id.* The Supreme Court considered the accrual of a §1983 fabrication of evidence claim. *Id.* at 2153-54. The Court explained that accrual rules are often decided by analogy to common law torts and that malicious prosecution is the analogous tort for fabricated evidence claims. *Id.* at 2156. The Court noted that the common law tort of malicious prosecution required a showing of favorable termination of criminal proceedings before the civil rights plaintiff could sue and held that the plaintiff in *McDonough* likewise could not sue on his fabrication of evidence claim before favorable termination of his criminal case. *Id*. The Court explained:

> his claims challenge the validity of the criminal proceedings against him in essentially the same manner as the plaintiff in *Heck* challenged the validity of his conviction. And the pragmatic considerations discussed in *Heck* apply generally to civil suits within the domain of habeas corpus, not only to those that challenge convictions. The principles and reasoning of *Heck* thus point toward a corollary result here: There is not 'a complete and present cause of action,' to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing. Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of *Heck* will the statute of limitations begin to run.

*Id.* at 2158 (internal citations omitted).

8

Like the plaintiff in *McDonough*, Plaintiff was arrested and detained based on fabricated evidence. Dkt. 1 at ¶¶14-23. As long as the criminal proceedings based on the fabricated evidence continued, she did not have a right bring a Fourth Amendment pretrial deprivation of liberty claim. *See McDonough*; *see also Savory v. Cannon*, 947 F.3d 409, 431 (7th Cir. 2020) (section 1983 claims accrued when criminal proceedings terminated in plaintiff's favor, not when he was released from custody).

The Seventh Circuit has recently reaffirmed that the *Heck*-bar applies to Fourth Amendment pretrial detention claims. *Sanders v. St. Joseph Cty., Indiana*, No. 19-3066, 2020 WL 1531354 at *2, n. 2 *citing McDonough*, 139 S. Ct. 2149; *Savory*, 947 F.3d at 414. In *Sanders*, the *pro se* plaintiff brought a pretrial detention claim and the district court dismissed his claim on statute of limitations grounds. *Sanders*, 2020 WL 1531354, at *1. The Seventh Circuit held that the plaintiff's claim accrued when the detention ended, but added the important addition that:

> If, however, a conclusion that Sanders's confinement was unconstitutional would imply the invalidity of an ongoing criminal proceeding or a prior criminal conviction, then *Heck* would continue to bar Sanders's claim after his release and until either those proceedings terminated in his favor or the conviction was vacated.

*Sanders*, 2020 WL 1531354, at *2, n. 2; *see also Culp*, 2020 WL 1874075, at *3 ("Because, given the nature of his Fourth Amendment claim, a finding that Culp's detention in jail was unconstitutional would imply the invalidity of the charges brought against him, *Heck* barred that claim until those charges were dismissed."); *Hill v. Cook Cty.*, No. 18-CV-08228, 2020 WL 2836773, at *9–10 (N.D. Ill. May 31, 2020) (unlawful detention claim accrued with favorable termination of the criminal proceedings); *Serrano v. Guevara*, No. 17 CV 2869, 2020 WL 3000284, at *18 (N.D. Ill. June 4, 2020) (same). Plaintiff alleges that the arrest, charging, and prosecution were based on Defendants' fabrications. Those allegations plainly would have

9

implied the invalidity of an ongoing criminal proceeding had Plaintiff filed such a claim before the charges were dismissed, and Defendants surely would have argued that Plaintiff filed her claims too early had she filed while the criminal case was pending. *See Hill,* at *10.

**B. Defendants' Position Lacks Merit.**

Defendants ignore *McDonough* and primarily rely on the Seventh Circuit's decision in *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 669 (7th Cir. 2018) (hereinafter *Manuel II)*. Dkt. 50 at 4. After *McDonough,* however, the accrual rule that Defendants derive from *Manuel II* is no longer good law. In *Manuel*, the plaintiff alleged that he was detained pretrial based on fabricated evidence. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 914 (2017) ("*Manuel I*"). Ultimately the charges against him were dismissed before trial. *Id.* The following day he was released from detention. *Manuel II,* at 669. Defendants argue that under *Manuel II* the end of detention triggers accrual of the pretrial detention claim[5]. Dkt. 50 at 5. Even accepting that reading of *Manuel II* for the sake of argument, Defendants' proposed accrual rule does not survive *McDonough.* As explained in *Culp,* after *McDonough, Savory,* and *Sanders* pretrial detention claims accrue once criminal proceedings terminate in plaintiff's favor, and the rule that Defendants attribute to *Manuel II* is no longer good law. 2020 WL 1874075, at *2.

Defendants' citation to the Seventh Circuit's unpublished decision in *Knox v. Curtis* is also unavailing. Dkt. 50 at 5-6. *citing* 771 F. Appx. 656, 658 (7th Cir. 2019). In *Knox,* the Seventh Circuit reviewed a grant of a motion to dismiss in a case brought by a *pro se* plaintiff who had been convicted of the underlying criminal charges. *Id.* at 657. Relying on *Manuel II,* the

---

[5] Plaintiff contends that even under *Manuel II*, the plaintiff could not sue until two pre-conditions were met: 1) detention ended and 2) the *Heck* bar was lifted. *Manuel II* at 670 (*"Heck* tells us that a claim does not accrue before it is possible to sue on it. Once he was out of custody and could sue, Manuel's claim accrued"). But Plaintiff accepts Defendants' contention for the sake of argument because Defendants' reading of *Manuel II* has been overruled by *McDonough*.

*Knox* court determined the accrual date for the plaintiff's Fourth Amendment claim was either the date he was released from detention or the date of his conviction. *Id. Knox* does not address the accrual of a claim by a plaintiff who was not convicted. Moreover, even if it did, because Defendants' reading of *Manuel II* is no longer good law after *McDonough,* as described more fully above, their reliance on *Knox* for the proposition that Plaintiff needed to sue earlier than she did provides no authority for Defendants' position.

Plaintiff's pretrial detention claim is timely.

### C. Pretrial Conditions Are Not Relevant to Accrual after *McDonough*—And Even If They Were—They Would Not Require Dismissal In This Case.

Defendants also seek to foreclose any argument that Plaintiff's "seizure" continued until her pretrial bond conditions were lifted. Dkt. 50 at 6. Relying on their understanding of the accrual rule announced in *Manuel II*, Defendants argue that the pretrial bond conditions were not sufficient to constitute a seizure, and that therefore the seizure ended when Plaintiff left custody in October 2017, making her claim untimely because she did not sue before October 2019. *Id. citing Allen v. Utreras*, No. 17 C 2144, 2018 WL 8261309, at *1-2 (N.D. Ill. Nov. 9, 2018). Because Defendants' reading of *Manuel II* is no longer good law after *McDonough*, Defendants' argument about pretrial conditions is irrelevant. Under *McDonough,* Plaintiff could not bring her claim until the criminal proceedings terminated in her favor, in June 2018, and an analysis of pretrial conditions is unnecessary.

Defendants' citation to *Allen* fails for the same reason. In *Allen,* the Court considered when the plaintiff's Fourth Amendment pretrial deprivation of liberty claim accrued. *Allen,* 2018 WL 8261309 at *1-2. The Court cited *Manuel II* for the proposition that the claim accrued when detention ended. The Court went on to discuss whether the detention ended when the plaintiff was released from custody or when the pretrial bond conditions were lifted. *Id.* The Court

11

concluded that the pretrial bond conditions in that case were not sufficiently onerous to constitute a seizure. *Id.* at 1. After *McDonough* (which was issued several months after *Allen* was decided), *Manuel II* no longer provides the accrual rule for pretrial detention claims and so the reasoning of *Allen* is no longer sound. 139 S.Ct. at 2154-55.

But even if the Court does wish to consider how pretrial bond conditions impact accrual of the Fourth Amendment claim, those conditions would not provide a basis for dismissal in this case. As Defendants concede, the Seventh Circuit has not yet expressly decided whether pretrial release conditions qualify as a Fourth Amendment seizure. *Mitchell v. City of Elgin*, 912 F.3d 1012, 1017 (7th Cir. 2019). Accordingly, Plaintiff's pretrial conditions may constitute a seizure for Fourth Amendment purposes which would also make her claim timely, even under Defendants' understanding of the accrual rule. *See, e.g., Cregan v. Piwnicki*, 18 C 4186, 2020 WL 1166086, at *2 (N.D. Ill. Mar. 11, 2020) ("Moreover, although Cregan was released on bond, his pretrial release likely was subject to certain conditions, some of which may have so restricted his liberty to constitute a seizure for Fourth Amendment purposes."). Thus, even if the Court were to hold that Plaintiff's claim accrued at the end of her pretrial conditions rather than when the charges were dropped, discovery as to the particular conditions imposed on her would be necessary to decide the issue, and so dismissal on the statute of limitations affirmative defense would not be appropriate at this stage. *See id.; see also Chicago Bldg. Design, P.C. v. Mongolian House, Inc*., 770 F.3d 610, 613 (7th Cir. 2014) (statute of limitation is an affirmative defense and should not typically be decided at the motion to dismiss stage unless the complaint itself sets forth all the information necessary to satisfy the affirmative defense)

Plaintiff's Fourth Amendment claim is timely and should proceed.

### III. Plaintiff Has Adequately Pled Her Conspiracy Claim.

Defendants argue that Plaintiff has not adequately pled her conspiracy claim and that it is impermissibly "vague." Dkt. 50 at 7-8. To the contrary, Plaintiff has adequately pled her conspiracy claim. Plaintiff alleges that Defendant Officers used a bogus warrant to invade her home, ransack her apartment, and falsely arrest her for a narcotics crime she did not commit. Dkt. 1 at ¶17, ¶¶ 18-22. Plaintiff further alleges that Defendant Officers Salgado and Elizondo were part of an ongoing scheme to fraudulently obtain materially false search warrants, including inducing informants to provide false information and manipulating Cook County judges. *Id.* at ¶¶ 24-27. Plaintiff has pled that Defendant Officers came to an agreement to violate her constitutional rights and committed overt acts in furtherance of that agreement. Dkt. 1 at ¶¶81-88.

Plaintiff's complaint provides "a plausible account of a conspiracy," making dismissal improper. *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). Given the steps Defendants took to obtain bogus warrants—including manipulating purported informants as well as Cook County judges—"[i]t is a challenge to imagine a scenario in which" the Defendants' illegal actions "would not have been the product of a conspiracy." *Id; see also, Rivera v. Lake Cty.*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013) ("allegations of a pattern of misconduct by a group of individuals can give rise to an inference that the misconduct was the result of a conspiratorial agreement"). In order to prove a conspiracy, a plaintiff must show only that defendants understood "the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do [their] part to further them." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Plaintiff's complaint adequately alleges that Defendants engaged in such behavior.

IV.     **Plaintiff's Failure to Intervene, Conspiracy, *Monell*, and Indemnification Claims Must Proceed.**

Defendants argue that Plaintiff's failure to intervene, conspiracy, *Monell*, and indemnification claims must be dismissed because Plaintiff has not adequately pled an underlying constitutional violation. Dkt. 50 at 7, 9-10. For all the reasons set forth above, Plaintiff has stated claims under the Fourteenth and Fourth Amendment. Accordingly, her failure to intervene, conspiracy, *Monell*, and indemnification claims must also proceed.

## Conclusion

For the foregoing reasons, Plaintiff's Fourteenth Amendment claim, Fourth Amendment claim, failure to intervene claim, conspiracy claim, *Monell* claim, and indemnification claim should proceed.

Respectfully submitted,

/s/ Theresa Kleinhaus
*One of Plaintiff's Attorneys*

Jon Loevy
Arthur Loevy
Scott Rauscher
Joshua Tepfer
Theresa Kleinhaus
Loevy & Loevy
311 North Aberdeen Street, Third Floor
Chicago, Illinois 60607
Phone: (312) 243-5900

## CERTIFICATE OF SERVICE

I, Theresa Kleinhaus, an attorney, certify that on July 10, 2020, the foregoing was served via the Court's electronic filing system upon all counsel of record.

/s/ Theresa Kleinhaus

14